# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

John Joseph Waters, Jr.,

                            Plaintiff,

v.

Gerard Leon Cafesjian, *et al.*,

                            Defendants.

Civ. No. 12-648 (RHK/LIB)
**MEMORANDUM OPINION AND ORDER**

John Joseph Waters, Jr., Eden Prairie, Minnesota, Plaintiff *pro se*.

Erin Sindberg Porter, Larry D. Espel, Katherine Swenson, Greene Espel PLLP, Minneapolis, Minnesota, for Defendants.

## INTRODUCTION

This case centers on millions of dollars Plaintiff John Joseph Waters, Jr. obtained from his longtime employer, Defendant Gerard Leon Cafesjian. Waters commenced this action in March 2012, alleging the money was part of his agreed-to compensation and that Cafesjian owed him millions more. Cafesjian counterclaimed that Waters had embezzled the funds from him and his companies, G.L.C. Enterprises, Inc. ("GLC") and The Cafesjian Family Foundation, Inc. ("CFF"); he also brought third-party claims against Waters's wife, Cheri Kuhn Waters ("Kuhn"), for her alleged role in the theft. On May 9, 2013, the Court granted summary judgment in Defendants' favor on Waters's claims, leaving only Cafesjian's counterclaims and third-party claims for resolution.

Cafesjian[1] now moves to voluntarily dismiss his third-party claims against Kuhn and his constructive-trust counterclaim against Waters, and he separately moves for summary judgment on his remaining counterclaims. For the reasons that follow, his Motions will be granted.

**BACKGROUND**

Cafesjian hired Waters in 1996 to work as his assistant at CFF. (Swenson Aff. Ex. I at 7-8.) At that time, Waters prepared a memo outlining his terms of employment, listing his base compensation at $84,000 with bonuses up to $36,000 per year. (Id. Ex. J at 48-50; Waters Aff. Ex. E.) This is the only written document memorializing a compensation agreement between Cafesjian and Waters. (Swenson Aff. Ex. J at 52-53, 105-06.) Over the next 13 years, Waters became one of Cafesjian's most trusted advisors, was promoted to Vice President of CFF and GLC, and was considered Cafesjian's "right-hand man." (Id. Ex. A at 593, 734; Porter Aff. Ex. A at 12-13; Compl. ¶¶ 24, 26.)

In order to execute Cafesjian's interests, Waters was given signing authority on Cafesjian's personal checking account at Northern Trust Bank (the "0512 Account"). (Swenson Aff. Ex. D at 4.) Between 1998 and his resignation in 2009, Waters used that authority to move at least $4,644,000 from the 0512 Account to a pair of U.S. Bank

---

[1] Cafesjian died in September 2013, and his estate's representative, Kathleen Cafesjian Baradaran, moves unopposed to substitute in his place. Federal Rule of Civil Procedure 25(a)(1) provides that if a claim is not extinguished by the death of a party, substitution may be ordered if requested by the decedent's successor within 90 days of serving a statement noting the death. Here, Cafesjian's claims survived his death, see Minn. Stat. § 573.01, and the substitution Motion is timely; accordingly it will be granted. For ease of reference, the estate will be referred to hereafter as "Cafesjian".

accounts he opened in Cafesjian's name (the "6924 and 7856 Accounts"). (Id. Ex. D at 5, 9.) After those initial transfers, Waters regularly converted funds from the 6924 and 7856 Accounts into cash or into accounts belonging to himself, his friends, or his family, including Kuhn. (Id. Ex. D at 4-6.) When Waters resigned from GLC and CFF in 2009, he left no records of the 6924 and 7856 Accounts at either office, and Cafesjian testified in his deposition that he was unaware of the accounts until after Waters's departure. (Id. Ex. D at 5; id. Ex. I at 21-34; id. Ex. J at 88-90.)

In his Complaint, Waters acknowledged transferring the funds to his accounts, but he claimed his employment agreement had been verbally amended such that the money was simply a portion of the compensation he was due. (Id. Ex. A at 813-14; Compl. ¶ 65.) Cafesjian responded that Waters had embezzled the money; he brought counterclaims for civil theft, conversion, breach of fiduciary duty, constructive trust, and fraud against Waters, and he filed third-party claims for civil theft and conversion against Kuhn. (Am. Answer ¶¶ 203-238.) The Court dismissed all of Waters's claims at summary judgment, finding that he had failed to produce sufficient evidence that his employment agreement ever had been modified. (See Doc No. 109.) Cafesjian's counterclaims and third-party claims remained unresolved.

Meanwhile, in August 2013, Waters was indicted in this Court (Montgomery, J.) for mail fraud, wire fraud, tax evasion, and tax fraud concerning transactions at issue in this case; on August 15, 2013, the undersigned stayed this action pending the outcome of those criminal proceedings. (See Doc. Nos. 120-121.) Following a jury trial in 2014, Waters was convicted on all counts, sentenced to 108 months' imprisonment, and ordered

to pay over $5 million in restitution.  (Swenson Aff. Ex. A at 1045-49; id. Ex. B at 46; id. Ex. H.)[2]  With no remaining possibility of entanglement with the criminal proceedings, the Court lifted the stay in this action on March 6, 2015.  (Doc. No. 124.)

Cafesjian has now agreed to voluntarily dismiss his claims against Kuhn and his constructive trust counterclaim against Waters, and he moves for summary judgment on his remaining counterclaims for civil theft, conversion, breach of fiduciary duty, and fraud.  The Motion has been fully briefed and is ripe for disposition.

## STANDARD OF DECISION

Summary judgment is proper if, drawing all reasonable inferences in favor of the nonmoving party, there is no genuine issue as to any material fact and the moving parties are entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); Ricci v. DeStefano, 557 U.S. 557, 586 (2009).  The moving parties bear the burden of showing that the material facts in the case are undisputed.  Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011) (*en banc*).  The Court must view the evidence, and the inferences that may be reasonably drawn from it, in the light most favorable to the nonmoving party.  Beard v. Banks, 548 U.S. 521, 529-30 (2006); Weitz Co. v. Lloyd's of London, 574 F.3d 885, 892 (8th Cir. 2009).  The nonmoving party may not rest on mere allegations or denials, but must show through the presentation of admissible evidence that specific facts exist creating a genuine issue of material fact for trial.  Fed. R. Civ. P. 56(c)(1)(A); Wood v. SatCom Mktg., LLC, 705 F.3d 823, 828 (8th Cir. 2013).

---

[2] The Eighth Circuit recently affirmed Waters's conviction and sentence.  See United States v. Waters, __ F.3d __, 2015 WL 4978769, at *8 (8th Cir. Aug. 21, 2015).

## ANALYSIS

Cafesjian seeks to recover the funds Waters transferred from his accounts, not including amounts converted directly to cash, under several legal theories, including civil theft. Judgment in his favor on any one counterclaim would, therefore, render moot the others. Additionally, Cafesjian seeks statutory punitive damages for civil theft. The Court therefore begins – and ends – its analysis with the civil-theft counterclaim.

Cafesjian argues that (1) Waters is collaterally estopped from denying liability for civil theft, in light of his criminal conviction, and (2) even if not collaterally estopped, no genuine issue of material fact exists with respect to that counterclaim. (See Def. Mem. at 21-22.) While his arguments regarding collateral estoppel may well have merit, the Court need not reach them because it agrees there is no genuine issue of material fact. Minnesota's civil-theft statute provides that "[a] person who steals personal property from another is civilly liable to the owner of the property for its value when stolen plus punitive damages of either $50 or up to 100% of its value when stolen, whichever is greater." Minn. Stat. § 604.14, subd. 1. "[C]ourts rely on the criminal theft statute to determine whether a defendant's conduct amounted to theft." Damon v. Groteboer, 937 F. Supp. 2d 1048, 1076 (D. Minn. 2013) (Tunheim, J.); accord City of Farmington Hills Emps. Ret. Sys. v. Wells Fargo Bank, N.A., 979 F. Supp. 2d 981, 996 (D. Minn. 2013) (Frank, J.). Minnesota's criminal-theft statute defines theft as transferring, concealing, or retaining property "intentionally and without claim of right . . . with intent to deprive the owner permanently of possession." Minn. Stat. § 609.52, subd. 2(1).

Here, Waters does not deny taking the money; instead he argues – as best the Court can discern from his somewhat rambling (non-)response – that he had a "claim of right" to it under a verbally amended employment agreement. (See Mem. in Opp'n at 3.) Yet, the Court has already determined, when granting summary judgment to Defendants on Waters's claims, that no compelling evidence of such an agreement exists.[3] Additionally, Waters's attempts to conceal his activities demonstrate his intent to permanently keep Cafesjian's funds. Waters removed all bank statements for the 6924 and 7856 Accounts from GLC's offices, disguised transfers by coding them "Household Unallocated" in GLC's ledgers, and structured transfer amounts to avoid reporting requirements. (Swenson Aff. Ex. D 4-9; id. Ex. J 88-90.) As a result, there is no genuine issue that the elements of civil theft have been satisfied, and Cafesjian's Motion for partial summary judgment will be granted on this counterclaim.

All that remains, therefore, is to determine the amount of damages to which Cafesjian is entitled.[4] To prove his damages, Cafesjian has proffered a chart admitted into evidence during Waters's criminal trial showing $1,895,500 as the total of funds transferred from Cafesjian's personal accounts to Waters-related accounts. (Doc. No.

---

[3] In fact, Waters testified under oath in another proceeding that his employment contract was never changed, modified, or updated. (Swenson Aff. Ex. A at 919:17.) And, he never listed the so-called "additional" compensation in a 2007 application to join a bank's Board of Directors or in his divorce decree. (Id. Ex. D at 13; Porter Aff. Ex. G at 8.) All evidence before the Court indicates there was no amended employment agreement entitling Waters to additional funds – precisely what the jury determined in his criminal case. See also United States v. Waters, __ F.3d __, 2015 WL 4978769, at *6 (8th Cir. Aug. 21, 2015) ("[T]here was ample evidence to demonstrate Waters's defense was a post hoc falsity to cover his fraud.").

[4] Notably, the fact that Waters was ordered to pay restitution in the criminal case does not impact Cafesjian's entitlement to damages. See State v. Fader, 358 N.W.2d 42, 48 (Minn. 1984).

137 at 33; Swenson Aff. Ex. K.) Waters admits that he transferred approximately $1.8 million to his own accounts, and he has presented no persuasive evidence to dispute Cafesjian's totals. (Swenson Aff. Ex. A at 813-14.) Accordingly, the Court concludes Cafesjian is entitled to recover compensatory damages in the amount of $1,895,500.

Punitive damages, as authorized by Minnesota's civil-theft statute, also are appropriate in this case. In Minnesota, punitive damages "are intended to punish a defendant, or to make an example of a defendant's wrongdoing." Williamson v. Prasciunas, 661 N.W.2d 645, 653 (Minn. Ct. App. 2003). Here, Waters engaged in a 10-year embezzlement scheme, misappropriating nearly $1.9 million from his trusting employer through hundreds of covert bank transfers. Upon resigning in 2009, he attempted to cover his tracks by removing all evidence of his hidden accounts from the workplace and by changing the mailing address for all future bank statements. (Swenson Aff. Ex. D at 4; id. Ex. J at 88-90.) When he was contacted by private investigators hired by Cafesjian, he stalled, denied, and threatened Cafesjian and his family if the matter were pursued any further. (Id. Ex. C at GLC029255.) He alleged that Cafesjian was paranoid, had dementia, and had ordered the transfers to "muddy the waters" in an attempt to avoid the requirements of the Patriot Act. (Id. Ex. A at 101, 111-13.) Notably, Waters made no claim of a modified employment agreement until *after* he was contacted by FBI agents pursuing criminal charges. (Id. Ex. A at 910.) Furthermore, the jury in Waters's criminal trial found, and the Eighth Circuit affirmed, that his claim of a modified employment agreement was so contradicted by the evidence that it amounted to perjury, resulting in a sentencing enhancement for obstruction of justice. See United

States v. Waters, __ F.3d __, 2015 WL 4978769, at *8 (8th Cir. Aug. 21, 2015) ("The overwhelming evidence at trial demonstrated Waters invented the modified-employment-agreement explanation as a way to cover up his fraud."). And as noted at his sentencing, Waters has shown no remorse and taken no responsibility for his actions or their effect on the lives of those who once trusted him. (Swenson Aff. Ex. B at 44.) Under these circumstances, the Court determines that Cafesjian is entitled to the maximum amount of punitive damages – $1,895,500 – pursuant to Minn. Stat. § 604.14, subd. 1.[5]

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED**:

1. Cafesjian's Motion for Substitution of Parties (Doc. No. 131) is **GRANTED**; and

2. Cafesjian's Motion for Partial Summary Judgment and for Voluntary Dismissal of Certain Claims (Doc. No. 136) is **GRANTED IN PART** and **DENIED IN PART** as moot. The Motion is **GRANTED** as to Cafesjian's request to voluntarily dismiss his third-party claims against Kuhn and his constructive-trust counterclaim against Waters, and those claims are **DISMISSED WITHOUT PREJUDICE**. The Motion is further **GRANTED** as to the civil-theft counterclaim, and **DENIED AS MOOT** as to the remaining counterclaims. It is further **ORDERED** that Defendant

---

[5] In his Memorandum, Cafesjian also seeks prejudgment interest on his damages. (See Doc. No. 137.) However, he has cited no authority for such a request, nor offered any computation thereof or a method of calculating it. Accordingly, and given that the Court has awarded nearly $2 million in punitive damages, it perceives no basis to also award prejudgment interest.

Gerard Leon Cafesjian shall recover of Plaintiff John Joseph Waters, Jr. the sum of $3,791,000, comprising $1,895,500 in civil-theft damages and $1,895,500 in punitive damages.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Date:  August 28, 2015 s/Richard H. Kyle
RICHARD H. KYLE
United States District Judge